Wyly, J.
The plaintiff who purchased an undivided half of a warehouse and lot on Julia street, at a sale made by the marshal under a writ of venditioni exponas, issued by the United States District Court in the confiscation proceedings of the United States v. Ten Lots of Ground alleged to be the property of Charles M. Conrad, brought this-suit against the defendants, the owners of the other half of said property, for a partition thereof. Alleging that said property can not be divided in hind without deterioration of value, he prays for a partition by licitation.
*153 The court rendered the judgment prayed for, and the defendants appeal.
Several interesting questions are presented in this case. One is: Assuming that the plaintiff bought at said sale, and the property so acquired belonged to Charles M. Conrad at the time it was condemned by decree of the United States District Court, under proceedings based on the act of July 17, 1862, commonly known as the confiscation act, did the estate so acquired confer on the plaintiff the right to demand of the defendants, who are admitted to be the owners of the other half of the property, a partition by licitation 1
In other words, did the title acquired under said confiscation proceedings (which have frequently been held only to convey the life estate of the party accused) give the plaintiff the right to demand of the defendants, the admitted co-proprietors, the sale of the thing held in common, and a division of the proceeds ?
•Another, and the most important question in the case, is: Did the decree of condemnation and the sale by the marshal convey any title whatever to the plaintiff in and to the undivided half of said property, in view of the fact that prior to said confiscation proceedings, and prior to the act of July 17, 1862, authorizing it, Charles M. Conrad had by notarial act in the parish of St. Mary, on the third June, 1862, sold and conveyed said property to the defendants, the deed, however, although recorded in the parish of St. Mary, not having been registered in the parish of Orleans until long after said confiscation and sale ?
As the view we have taken of this quesbiot^will dispose of the case, we will confine our investigations to it.
And here we will remark that the act of July 17, 1862, “An Act to suppress insurrection, to punish treason and rebellion, to seize and confiscate the property of rebels, and for other purposes,” was not intended to confiscate the property of rebels generally; but its operation was expressly confined to the property of persons of the class mentioned in the fifth and other sections; it was only the property of such persons that the act proposed to confiscate. The language is, “that to insure the speedy termination of the present rebellion, it shall be the duty of the President of the United States to cause the seizure of all the estate and property, money, stocks, credits and effects of persons hereinafter named in this section, and to apply and use the same, and the proceeds thereof, for the support of the army of the United States.”
• As Charles M. Conrad was an offender of a class mentioned, the statute authorized the confiscation of his property, or the condemnation and sale thereof for the period of his life. Bigelow v. Forest, 9 Wal. 347.
By the decree of condemnation of the third of February, 1865, only *154 such right or title as the said offender had passed to and vested in the United States, and this was the title conveyed to the pi lintiff by the marshal on the twenty-ninth March, 1865. But Conrad at that time had no title to the property, having sold it to the defendants by notarial act in the parish of St, Mary, on the third of June, 1862, not only prior to the seizure, but anterior to the passage of the confiscation act itself. When this law was brought to bear against Charles M. Conrad, the object was to punish an offense committed by him subsequent to the enactment thereof, and the penalty was to vest in the United States the property of the offender during the period of his life.
The confiscation of the property in question was not intended by the law, for it could inflict no punishment on'Conrad, the alleged offender, because for a valuable consideration he had already sold it to the defendants, and as between the parties, without registry, the sale was perfect from the time of the execution thereof. Revised Code, 2456.
In regard to this property the position of the United States was not' that of a third party dealing with Conrad on the faith of the title standing in his name on the public records, or that of a bidder at a judicial sale who is induced to buy the property standing on the public records in the name of the defendant in execution.
The failure of defendants to record their title in the parish of Orleans, as required by the registry laws of the State, subjected them to the risk of losing it, if seized by a creditor of their vendor, or if sold or hypothecated by him to an innocent third party. But the title of the property was, nevertheless, in them from the time of the sale; and neither their vendor nor his heirs could recover it from them. If he was honest and owed no debts their title was safe; if the purchasers wished to avoid these contingencies, a compliance with the registry laws of the State would have given them ample protection.
As to the United States, it was immaterial whether the defendants had recorded their title or not; the property in question belonged to them, and their title was not impaired by the proceedings under the act of July 17, 1862, instituted to confiscate the property of Conrad for offenses committed by him.
Assuming the theory of the plaintiff to be true, that the United States occupied the position of a third party in the sense of the statute and jurisprudence of this State, and therefore the failure of the defendants to comply with our registry laws subjected the property in question to the decree of condemnation as the property of Charles M. Conrad, the effect will be that the plaintiff will hold it during the life of the offender, and then it will not pass to his heirs as the law of July 17, 1862, contemplates. It can never pass to the heirs of Charles M. Conrad, because heirs can only inherit what belonged to the deceased, *155 and by succession they only succeed to his property. The property in question passed out; of Charles M. Conrad when the notarial act of June 3, 1862, was executed, and this act will be binding on his heirs whether recorded or not; but the deed was recorded in the parish of Orleans on the eighth December, 1870.
The fee or title of the property is beyond doubt in the defendants, and was at the time of the confiscation proceedings and before; and when the life estate of Charles M. Conrad owned by the plaintiff (if, under the circumstances, such could exist), is carved out, or has terminated, the defendants will recover the property not as heirs, but as vendees of Charles M. Conrad. And the anomaly presented is, that the plaintiff, claiming the life estate of Charles M. Conrad by virtue of the proceedings and sale under act of July 17, 1862, here sues the defendants, in whom the fee or title of the property is vested, for a partition by licitation; that is, for a sale of the thing and a division of the proceeds. And this life estate, assimilated by this court to the servitude of usufruct under our law, is fixed as the property in question in a proceeding to which its owners, the defendants, were not parties.
To fix this servitude on the property, of what avail was it that Charles M. Conrad was constructively before the court at the time of the decree of condemnation ? He was not the owner. Its condemnation did not affect him, even as a warrantor. It was the defendants alone who could be affected by the forfeiture of the property, and as they were not parties to the proceedings, their title to the property was not divested by the decree of condemnation. And the plaintiff, in buying from the marshal, was not in the position of a bidder at a sale under execution for property standing on the public records in the name of the defendant in execution.
He is charged with notice of the character of the decree under which the sale was made, that it was a confiscation sale, and he was bound to know its legal effect. Bigelow v. Forrest, 9 Wal. 347. He bought only the title of the United States, which was not valid as regards the defendants. Our conclusion is, that the property in question belongs to the defendants, and the plaintiff has no right to demand a partition thereof.'
It is therefore ordered that the judgment herein be set aside and annulled, and it is decreed that plaintiff’s demand be rejected, and that the defendants have a valid title to the property described in the petition, and that they be put in possession thereof.
. It is further ordered that plaintiff pay costs of both courts.
Rehearing refused.